## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JESSICA GUERRERO, JEFFREY MATTHEWS and JOSEPH CASTILLO, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>     v.<br><br>MERRITT HEALTHCARE HOLDINGS, LLC d/b/a MERRITT HEALTHCARE ADVISORS,<br><br>                Defendant. | Case No.: 3:23-cv-00389-MPS<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF NOTICE PLAN** |

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF CONTENTS………………………………………………………..…i

TABLE OF AUTHORITIES………………………………………………………iii

I.      INTRODUCTION ..................................................................................... 1

II.     BACKGROUND ...................................................................................... 2

      A.      Summary of Allegations ................................................................ 2

      B.      Mediation and Settlement .............................................................. 3

III.    SUMMARY OF THE PROPOSED SETTLEMENT ................................ 4

II.     The Settlement Class Definition .............................................................. 4

III.    Settlement Consideration (Common Fund) .............................................. 5

      A.      Direct Monetary Relief to Settlement Class Members. .................. 5

      B.      Attorneys' Fees and Expenses, Service Awards, and Cost of Settlement

            Administration ............................................................................... 6

      C.      Dismissal and Release of Claims................................................... 7

      D.      The Proposed Notice Program and Claims Program ....................... 7

      E.      Settlement Administration .............................................................. 9

IV.    ARGUMENT............................................................................................ 9

V.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL........ 10

      A.      The Settlement is Procedurally Fair................................................ 11

# TABLE OF CONTENTS
(continued)

**Page**

    B.     The Settlement provides meaningful relief to the class. .................................. 13

    C.     The Settlement treats Settlement Class Members equitably. ...................... 16

    D.     The remaining factors weigh in favor of approval. .......................................... 16

VI.    THE COURT WILL BE ABLE TO CERTIFY THE SETTLEMENT CLASS.............. 18

    A.     The Requirements of Rule 23(a) are satisfied........................................................ 19

    B.     The Settlement Class Meets All Rule 23(b)(3) Requirements............................ 23

VII.   THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.................................. 24

VIII.  PROPOSED SCHEDULE OF EVENTS...................................................................... 26

IX.    CONCLUSION ............................................................................................................. 27

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...................................................................................................... 27

*Castillo v. Merritt Healthcare Holdings, LLC*,
    No. 3:23-cv-00489 (D. Conn.) ......................................................................................... 3

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)......................................................... 11, 12, 15, 16, 19, 20

*Cordes & Co. Fin Servs. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007)............................................................................................. 12

*Damassia v. Duane Read, Inc.*,
    250 F.R.D. 152 (S.D.N.Y. 2008) ................................................................................... 25

*Fogarazzao v. Lehman Bros.*,
    232 F.R.D. 176 (S.D.N.Y. 2005) ................................................................................... 24

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)................................................................................... 18

*George v. Shamrock Saloon II, LLC*,
    No. 17-6663, 2021 WL 3188314 (S.D.N.Y. July 28, 2021)............................................ 30

*Gilliam v. Addicts Rehab. Ctr. Fund*,
    No. 05-3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ............................................ 19

*Handschu v. Special Servs. Div.*,
    787 F.2d 828 (2d Cir. 1986)........................................................................................... 29

*Hicks v. Morgan Stanley & Co.*,
    No. 01-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)......................................... 16

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ........................................................................... 19

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)............................................................................... 16

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................................... 20

**TABLE OF AUTHORITIES**
(continued)

**Page**

*In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*,
    270 F.R.D. 45 (D. Mass 2010)...................................................... 28

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007) ................................................ 19

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*,
    241 F.R.D. 185 (S.D.N.Y. 2007) ................................................ 26

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307 (S.D.N.Y. 2020) ......................................... 15

*In re Nassau Cty. Strip Search Cases*,
    461 F.3d 219 (2d Cir. 2006)......................................................... 27

*In re Nissan Radiator/Transmission Cooler Litig.*,
    No. 10-7493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) .......... 24

*In re Packaged Ice Antitrust Litig.*,
    322 F.R.D. 276 (E.D. Mich. 2017) .............................................. 19

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ................................................ 16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019)............................................. 15, 20

*In re Sinus Buster Products Consumer Litig.*,
    No. 12-2429, 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) .......... 20

*In re Synchrony Fin. Sec. Litig.*,
    No. 18-1818, 2023 WL 4992933, (D. Conn. Aug. 4, 2023)........... 11

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06-11515, 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ........ 18

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)................................................... 22, 25

*Martens v. Smith Barney Inc.*,
    181 F.R.D. 243 (S.D.N.Y. 1998) ................................................ 25

iv

## TABLE OF AUTHORITIES
(continued)

**Page**

*Matheson v. T-Bone Rest., LLC*,
    No. 09-cv-04214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) ........................... 14

*Matthews v. Merritt Healthcare Holdings, LLC*,
    No. 3:23-cv-00476 (D. Conn) ......................................................................................... 2

*McMahon v. Olivier Cheng Catering & Events, LLC*,
    No. 08-cv-08713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010)...................................... 14

*Meredith Corp. v. SESAC, LLC*,
    87 F.Supp.3d 650 (S.D.N.Y. 2015) ................................................................................ 28

*Moses v. New York Times Co.*,
    79 F.4th 235 (2d Cir. 2023) ............................................................................................ 11

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)............................................................................................ 18

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)............................................................................................ 24

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015).............................................................................................. 22

*Tart v. Lions Gate Entertainment Corp.*,
    No. 14-8004, 2015 WL 5945846 (S.D.N.Y. Oct. 13, 2015)...................................... 27, 28

*TBK Partners, Ltd. v. Western Union Corp.*,
    675 F.2d 456 (2d Cir. 1982)............................................................................................ 21

*Viafara v. MCIZ Corp.*,
    No. 12-7452, 2014 WL 1777438 (S.D.N.Y. May 1, 2014) ............................................ 20

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ................................................................................................... 22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005).............................................................................................. 10

*Zeltser v. Merrill Lynch & Co., Inc.*,
    No. 13-1531, 2014 WL 4816134 (S.D.N.Y. Apr. 28, 2017) ........................................... 28

## <u>TABLE OF AUTHORITIES</u>
(continued)

<u>Page</u>

**Rules**

Fed. R. Civ. P. 23(e) ............................................................................................ *passim*

**Treatises**

*Newberg & Rubenstein on Class Actions* § 13:44 (6th ed. 2022) ................................................. 10

*William B. Rubenstein*, 4 NEWBERG ON CLASS ACTIONS § 13:50 (5th ed. 2020) .............. 13

I.     **<u>INTRODUCTION</u>**[1]

After informal discovery and months of arms-length negotiations, including a mediation session with mediator Hon. Wayne R. Andersen (Ret.), Plaintiffs have reached a settlement with Defendant on terms that provide excellent relief to the proposed class. The proposed settlement is fair, reasonable, and adequate, handily warranting preliminary approval.

The settlement provides timely and significant benefits to Settlement Class Members whose personally identifiable information ("PII"), private health information ("PHI"), and/or financial information (collectively, "Private Information"), was accessed by an unauthorized party during a security incident that Defendant discovered on or around November 30, 2022, and made public on or around March 14, 2023 (the "Incident"). Notice of this settlement may be issued as the Court is likely to find that the settlement is procedural and substantively fair under Rule 23(e) of the Federal Rules of Civil Procedure and that the proposed Class may be certified.

Plaintiffs vigorously prosecuted this Action on behalf of the Settlement Class and, in that process, developed an understanding of the strengths and weaknesses of their claims. Notwithstanding their confidence in the merits of those claims, Plaintiffs recognize the risks and delays inherent in proceeding through litigation and proving their claims at trial. The Settlement avoids those risks, and provides immediate, meaningful, and robust monetary and injunctive relief to all members of the Settlement Class.

For these and the additional reasons below, Plaintiffs respectfully request the Court: (1) find it will likely (a) approve the Settlement and (b) certify the Settlement Class for purposes of judgment on the Settlement; (2) appoint Plaintiffs as Class Representatives for the Settlement

---

[1] Unless otherwise noted, capitalized terms have the same meanings as in the Settlement Agreement ("Settlement") or in the operative complaint.

Class; (3) appoint Kevin Laukaitis of Laukaitis Law LLC and Laura Grace Van Note of Cole & Van Note as Class Counsel; (4) direct notice to the Settlement Class and approve the form and manner thereof; (5) authorize retention of Digital Settlement, LLC ("Digital Settlement") as Settlement Administrator; and (6) set a schedule for final approval of the Settlement and Plaintiffs' request for attorneys' fees, expenses, and Service Awards.

## II.   **BACKGROUND**

### A.   **Summary of Allegations**

This is a putative class action arising from an Incident whereby Plaintiffs Jessica Guerrero, Jeffrey Mathews, and Joseph Castillo ("Plaintiffs") allege an unauthorized third-party was able to gain access to Defendant's ("Merritt") computer network, which Defendant first discovered on or about November 30, 2022, and remove certain files containing sensitive information stored therein. ECF No. 50, ¶¶ 1-4. The Incident allegedly impacted 88,740 people. *Id.*, at ¶ 2. The information compromised in the Incident potentially included individuals' full names, treatment information, provider names, patient identification numbers, health insurance information, treatment cost information, and health insurance numbers. (information breached) *Id* at ¶ 1.

On March 29, 2023, Plaintiff Jessica Guerrero filed a Class Action Complaint in the United States District Court for the District of Connecticut against Defendant, asserting claims for negligence, negligence *per se*, breach of implied contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment. ECF No. 1 ¶¶ 92-151. On April 17, 2023, Plaintiff Jeffrey Matthews filed a Class Action Complaint against Defendant in the United States District Court for the District of Connecticut, asserting similar claims to those asserted by Plaintiff Guerrero. *See Matthews v. Merritt Healthcare Holdings, LLC*, Case 3:23-cv-00476 (D. Conn), ECF No. 1. On April 18, 2023, Plaintiff Joseph Castillo filed a Class Action Complaint

against Defendant in the United States District Court for the District of Connecticut, asserting similar claims to those asserted by Plaintiff Guerrero. *See Castillo v. Merritt Healthcare Holdings, LLC*, Case 3:23-cv-00489 (D. Conn), ECF No. 1. On June 6, 2023, Plaintiffs moved to consolidate their cases, and have their attorneys Kevin Laukaitis of Laukaitis Law LLC and Laura Van Note of Cole & Van Note ("Co-Lead Interim Counsel"), appointed as Co-Lead Interim Class Counsel. ECF No. 37. The Court granted Plaintiffs' motion on July 13, 2023. ECF No. 43.  Plaintiffs thereafter filed their Consolidated Class Action Complaint on July 26, 2023. ECF No. 50. On September 26, 2023, Defendant filed a motion to dismiss Plaintiffs' Consolidated Class Action Complaint. ECF No. 56.

In the time shortly following consolidation, the Parties began discussing possible early resolution and subsequently agreed to mediate the matter. ECF No. 59. In light of their agreement to mediate the case, on October 26, 2023, the Parties moved the Court to stay the action pending mediation, which the Court granted on October 27, 2023. ECF No. 59 & 60. On December 29, 2023, the Parties then notified the Court that they had reached an agreement to resolve the action on a class-wide basis. ECF No. 61.

### B.   <u>Mediation and Settlement</u>

After agreeing to mediate, but prior to the mediation session, the Parties engaged in informal discovery to help facilitate resolution discussions. Declaration of Kevin Laukaitis ("Laukaitis Decl.") ¶ 4.  On December 21, 2023, the Parties engaged in a mediation session overseen by the experienced Hon. Wayne R. Andersen (Ret.) of JAMS. *Id.* ¶ 5. After a successful full-day mediation session, the Parties were able to reach an agreement in principle, which if approved by the Court, will resolve all claims in the litigation. *Id.* The Parties then worked toward drafting and finalizing the proposed Settlement Agreement. *Id.* ¶ 6. They further obtained quotes from several claims administrators and agreed that Digital Settlement, LLC would best serve as

the settlement's Claims Administrator. *Id*. ¶ 7. The Parties continued drafting and finalizing the Settlement Agreement and proposed exhibits, and the Settlement Agreement was fully executed by all Parties as of April 19, 2024. *Id*. ¶ 8.

The negotiations leading to the settlement were contentious and hard-fought, with Plaintiffs' Counsel and Defendant's Counsel each advocating for the best interests of the Class and Defendant, respectively. *Id*. ¶ 9. The resulting settlement reflects an agreement reached at arm's length, in good faith, and free of any collusion. *Id*. Based upon their independent analysis, and recognizing the risks of continued litigation, counsel for Plaintiffs believe that the proposed settlement is fair, reasonable, and adequate, and is in the best interest of Plaintiffs and the proposed Settlement Class. *Id*. Although Defendant denies liability, it likewise agrees that settlement is in the Parties' best interests. For those reasons, and because the settlement is contingent on Court approval, the Parties submit this settlement to the Court for its review.

## III.    <u>SUMMARY OF THE PROPOSED SETTLEMENT</u>

The settlement's terms are detailed in the Settlement Agreement attached to Plaintiffs' concurrently filed a motion for preliminary approval as Exhibit 1 to the Declaration of Kevin Laukaitis. The following is a summary of the settlement's material terms.

### I.    **The Settlement Class Definition**

The Parties agree to the certification of the following Settlement Class (subject to the exclusions outlined below):

> All individuals within the United States of America whose PHI/PII and/or financial information was exposed to unauthorized third parties as a result of the data breach discovered by Defendant on November 30, 2022.

SA § II(B).

Excluded from the Settlement Class are: (a) Defendant's officers and directors; (b) any entity in which Defendant has a controlling interest; and (c) the affiliates, legal representatives,

attorneys, successors, heirs, and assigns of Defendant. Also excluded from the Settlement Classes are members of the judiciary to whom this caFse is assigned, their families, and members of their staff. *Id.*

## II. Settlement Consideration (Common Fund)

Defendant has agreed to pay $1,525,000 in cash to create a non-reversionary Settlement Fund for the benefit of Class Members. SA § II(E)(1). Class Members who submit valid claims through a simple, streamlined process will receive payment after the deduction of settlement-related costs, including expenses of notice to the Class and settlement administration, any Court-awarded attorneys' fees, expenses, and named plaintiff Services Awards. *Id.*

### A. Direct Monetary Relief to Settlement Class Members.

Under the settlement, Settlement Class Members may file claims for compensation for Out-of-Pocket Losses incurred as a result of the Incident and a Pro Rata Cash Payment from the $1,525,000 Settlement Fund. SA § II(H)(3),(4).

*Out-of-Pocket Losses.* Out-of-Pocket Losses include both out-of-pocket expenses as a result of the Incident, unpaid time off work to address issues fairly traceable to the Data Incident, and fees for credit reports, credit monitoring, or other identity theft insurance products purchased between March 14, 2023 and the end of the Claims Period. *Id*. Settlement Class Members must submit reasonable documentation to the Claims Administrator to support their claims for Out-of-Pocket Losses. *Id*. The maximum amount a Settlement Class Member may recover for Out-of-Pocket Losses is $5,000. *Id*.

*Pro Rata Cash Payment.* All Settlement Class members may file a claim for a *pro rata* portion of the Settlement Fund. SA § II(H)(3). The amount of this benefit shall be based on the number of claims received and the amount of funds remaining in the Settlement Fund following

the payment of claims for Out-of-Pocket Losses, approved Class Counsel Fees, Service Payments, and Administrative Costs. *Id.* For any individual, a Pro Rata Cash Payment may not exceed $500. *Id.*

*Cy Pres.* As to any portion of the Settlement Fund that remains after all of the above have been paid, the Parties shall meet and confer regarding the appropriate use of such residual funds, including whether any such funds shall be paid to one or more cy pres recipient, to be agreed upon by the Parties and approved by the Court, with no one cy pres recipient receiving more than $100,000. *Id.* No residual funds will revert to Defendant. *Id.*

**Payment Timing and Provisions for Residual Funds.** Within 90 days of the Effective Date, the Claims Administrator will process the approved Compensation Claims of Settlement Class Members and pay all approved Compensation Claims via a simple electronic payment method (*e.g.*, Venmo), pre-paid debit card, or check as selected by the Settlement Class Member. SA § II(H)(5). Settlement Class Members receiving payment by check under the Settlement will have 90 days from the date of issue to deposit any such payment. SA § II(H)(5)(a). After that time, funds associated with any uncashed or canceled checks shall be deemed Residual Funds, and will be dispersed to a *cy pres* recipient agreed upon by the Parties and to be presented to the Court for approval. SA § II(H)(4).

**B. Attorneys' Fees and Expenses, Service Awards, and Cost of Settlement Administration**

**Attorneys' Fees and Expenses.** Separate and apart from the monetary relief made available to the Settlement Class Members, Defendant agrees not to oppose an application by Class Counsel for an award of attorneys' fees and litigation costs not to exceed 33 1/3 percent of the Settlement fund ($508,283) (the "Class Counsel Payment"). SA § II(F)(1).

**Service Awards.** Separate and apart from the monetary relief made available to the Settlement Class Members, Class Counsel shall also seek, and Defendant has agreed to pay, Service Awards of $2,500 per Plaintiff from the Settlement Fund, subject to court approval. SA § II(F)(2). At least one week prior to the deadline for Settlement Class members to object to the settlement, Class Counsel will submit an application for Class Counsel Fees. SA § II(F)(1).

**Cost of Settlement Administration.** Separate and apart from the monetary relief made available to Settlement Class Members, the Fund will be used to pay all costs of settlement administration, including the payment of the Claims Administrator. SA § II(G).

### C. Dismissal and Release of Claims

In exchange for the proposed settlement consideration, upon the Effective Date of the settlement, Plaintiffs and Settlement Class Members shall be deemed to have completely released and forever discharged all claims and causes of action pleaded or that could have been pleaded that are related in any way to the Incident. SA §§ II(A)(6), II(H)(6).

### D. The Proposed Notice Program and Claims Program

### I.   Notice Program

Subject to the Court's approval, the Parties propose to individually notify each Settlement Class Member of the settlement and their rights under it through U.S. mail (and/or email). SA §§ II(I)(1)-(2). Specifically, Class Notice will be provided to the same population that received Defendant's pre-lawsuit cybersecurity incident notification. SA § II(I)(1). Given the relationship between Defendant and the Settlement Class Members, the prior round of pre-Lawsuit notification regarding the Incident, and the Claims Administrator's robust address checking programs, the Parties are confident in the accuracy of the proposed notice program. Laukaitis Decl. ¶ 10. Within ten days of preliminary approval, the Claims Administrator will mail by U.S. Mail (and/or email)

the Short Form Notice consistent with the form attached as Exhibit A to the Settlement Agreement to Settlement Class Members. SA § II(I)(2). The Claims Administrator will also create a settlement website that contains copies of the detailed Long Form Notice set forth as Exhibit B to the Settlement Agreement; the Claim Form set forth as Exhibit C to the Settlement Agreement; and other relevant case documents and information. SA § (II)(G). Further, the Claims Administrator will maintain a toll-free telephone number and P.O. Box by which Settlement Class members can seek additional information regarding the Settlement Agreement. *Id.*

The proposed Class Notice includes a description of the material terms of the settlement and the forms of relief available to Settlement Class Members; a date by which Settlement Class Members may object to or opt out of the Settlement; the date upon which the Final Approval Hearing will occur; and the address of the settlement website at which Settlement Class Members can submit a Claim Form and access the Settlement Agreement and other related documents and information. SA § (II)(I); *see also* SA, Exs. A-B.

Further, the proposed Class Notice advises Settlement Class Members of their rights to exclude themselves or object to the settlement and provides the deadline to do so, which the Parties propose will be 90 days from the date Class Notice is issued. SA § (II)(I)(3). The Class Notice also explains the full procedures for Settlement Class Members to exclude themselves or object to any aspect of the settlement. *See* SA, Exs. A-B.

The Claim Form (*see* SA, Ex. C) shall be available on the Settlement Website and clearly informs the Settlement Class Members of the process they must follow to submit a claim in order to receive a payment under the Settlement. SA § (II)(I)(3); SA, Ex. C. It is simple and provides Settlement Class Members with a straightforward explanation of rights, along with instructions for Settlement Class Members to provide the information required to submit a valid claim. *Id.*

Settlement Class Members may submit the Claim Forms via the Settlement Website by the end of the Claims Period or by copy via U.S. mail, so long as they are postmarked on or before the end of the Claims Period. *Id.*

## II.    **Claims Program**

Within 90 days of the Effective Date, the Claims Administrator will then disburse funds to settlement Class Members who filed approved Compensation Claims. SA § (H)(5). In the event approved Compensation Claims exceed the Settlement Fund, the approved Compensation Claims will be subject to a *pro rata* reduction. SA § (II)(H).

### E.  Settlement Administration

The proposed Claims Administrator is Digital Settlement, LLC. SA § (II)(G). The Claim's Administrator's duties include, among other things, the following: (1) assisting in the preparation of the Class Notice; (2) sending the Class Notice; (3) establishing and maintaining the settlement website, P.O. Box, and the toll–free telephone line for Settlement Class Member inquiries; (4) receiving and processing Claim Forms; (5) receiving and processing inquiries and requests for exclusion from Settlement Class Members; and (6) mailing settlement payment checks or processing electronic payments. *Id.*

## IV.    **ARGUMENT**

The Second Circuit recognizes a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *accord Newberg & Rubenstein on Class Actions* § 13:44 (6th ed. 2022) ("Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation.").

Settlement approval is a two-step process. First, the Court must determine whether it

"will likely be able to" (i) finally approve the proposed settlement as "fair, reasonable, and adequate"; and (ii) certify a class for purposes of judgment on the proposed settlement. *See* Fed. R. Civ. P. 23(e). After the class is given notice and an opportunity to object, the court holds a hearing to consider whether to finally approve the settlement and certify the Settlement Class. *See* Fed. R. Civ. P. 23(e)(2), (4), (5).

Preliminary approval of the Settlement is warranted here. ***First***, the Court will likely be able to finally approve the proposed Settlement—calling for substantial monetary relief and business practice changes—as fundamentally fair, reasonable, and adequate. ***Second***, the Court will likely be able to certify the Settlement Class at the final approval stage pursuant to Rules 23(a) and (b)(3). ***Third***, the proposed Notice Plan satisfies the requirements of Rule 23(c)(2). Accordingly, the Court should grant Plaintiffs' motion for preliminary approval of the class action settlement and direct notice to the Class.

## V.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.

Rule 23(e) requires courts to ensure that a class settlement is "fair, reasonable, and adequate" in light of the following factors:

(A)    the class representatives and Plaintiffs' Counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *Moses v. New York Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023).

When applying the Rule 23(e)(2) factors, courts in this Circuit evaluate both the *substantive* terms of the settlement and whether it is *procedurally* fair—*i.e.*, "whether the negotiating process by which the settlement was reached shows that the compromise is the result of arm's-length negotiations." *In re Synchrony Fin. Sec. Litig.*, No. 18-cv-01818, 2023 WL 4992933, at *3 (D. Conn. Aug. 4, 2023) (cleaned up). That evaluation requires consideration of the nine "*Grinnell* factors" set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), which overlap with the Rule 23(e)(2) factors.[2] *See, e.g.*, *Moses*, 79 F.4th at 243 ("Rule 23(e)(2) does not displace our traditional *Grinnell* factors.").

## A.   The Settlement is Procedurally Fair.

The Court first must consider procedural fairness, which is comprised of two considerations: (i) whether "the class representatives and class counsel have adequately represented the class" and (ii) whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)–(B); *see also Grinnell*, 495 F.2d at 463 (the third *Grinnell* factor—*i.e.*, the stage of the proceedings and the amount of discovery completed—overlaps with Rule 23(e)(2)(B)'s "negotiated at arms-length" factor).

### 1.   The Settlement Class has been vigorously represented.

Adequacy of representation requires consideration of whether "1) plaintiff's interests are

---

[2] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).

Plaintiffs' interests are aligned with the Settlement Class. Each Plaintiff is a current or former customer of Defendant whose Private Information was compromised as a result of the Incident. Defendant's alleged failure to implement reasonable data security measures impacted not just Plaintiffs' privacy, but the privacy of all Class Members, and as a result, Plaintiffs and the Class seek the same relief from the same injury.

Plaintiffs' counsel engaged in a thorough pre-suit investigation and significant informal discovery prior to settlement, which informed their understanding of the case's merits. Laukaitis Decl. ¶ 11. Counsel is eminently qualified to conduct this litigation and, as discussed below, has done so vigorously to date. *See* section VI(4), *infra*.

### 2. The Settlement was negotiated at arm's length after the exchange of informal discovery.

This settlement bears all of the qualities of arm's length negotiations. First, a neutral mediator's participation in the settlement process is among the indicia of the settlement's fairness. *See William B. Rubenstein*, 4 NEWBERG ON CLASS ACTIONS § 13:50 (5th ed. 2020) ("Evidence of a truly adversarial bargaining process helps assuage this concern [of collusive settlements] and there appears to be no better evidence of such a process than the presence of a neutral third party mediator").

Second, prior to negotiating the settlement, Plaintiffs and Plaintiffs' Counsel were well-informed about the strengths and weaknesses of their claims against Defendant. Laukaitis Decl. ¶ 11. Plaintiffs' Co-Lead Interim Class Counsel's negotiating strategy benefited from the information obtained from Defendant's public disclosures, their independent investigation, and

the pre-mediation information requests. *Id*. ¶ 12.

Lastly, skilled and experienced counsel engaged in adversarial negotiations for each of the parties. Defendant is represented by counsel with extensive experience in privacy and data security law, and with complex class litigation generally. Settlement negotiations took several months and included mediation on December 21, 2023, which resulted in an excellent monetary settlement for the Class. *Id*. ¶ 13. When viewed in their totality, the circumstances fully support the conclusion that the settlement is procedurally fair. *Id*. ¶ 14

Although formal discovery did not take place, the parties informally exchanged information before, between, and after their mediation session bearing on the merits of Plaintiffs' claims, the size of the class, and the scope of security services employed by Defendant. Accordingly, Plaintiffs' counsel—attorneys with considerable experience in assessing the strengths and weaknesses of data breach cases—are well-informed about the strengths and risks of the claims, as well as their value. *Id.* ¶ 14.

This thoroughness and consistently adversarial posture favor preliminary approval. *See, e.g.*, *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08-cv-08713, 2010 WL 2399328, at *5 (S.D.N.Y. Mar. 3, 2010) ("efficient informal exchange of information" sufficient to recommend settlement approval); *Matheson v. T-Bone Rest., LLC*, No. 09-cv-04214, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (informal discovery allowed plaintiffs to "weigh the strengths and weaknesses of their claims" and "day-long mediation allowed them to further explore the claims and defenses"). As such, the Settlement satisfies Rule 23(e)(2)(A) and (B), as well as the third *Grinnell* factor, and is procedurally fair.

## B.     The Settlement provides meaningful relief to the class.

The Court should find that the Settlement's benefits are sufficiently robust to merit notice to Settlement Class Members. The $1,525,000 cash, non-reversionary common fund Settlement

13

represents a significant monetary award.

Such relief is particularly significant considering the costs and risks of further litigation, the proposed method of distributing relief to the Settlement Class, the Settlement terms relating to attorneys' fees, and the absence of related agreements. Fed. R. Civ. P. 23(e)(2)(i)–(iv); *see also Grinnell*, 495 F.2d at 463 (overlapping with *Grinnell* factors one, four through six, eight, and nine).

**Risks of further litigation**. Continued litigation of this case would be "complex, expensive, and lengthy." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 312 (S.D.N.Y. 2020); *see also* Fed. R. Civ. P. 23(e)(2)(C)(i) (requiring courts to consider "the costs, risks, and delay of trial and appeal"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019) (Rule 23(e)(2)(C)'s "risks" factor overlaps with *Grinnell* factors one, four, five, and six). Indeed, the Settlement resolves a complex class action—previously, three separate class actions—that have been and would continue to be costly to litigate through trial. Laukaitis Decl. ¶ 15; *see In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (settlement avoids costs associated with "inherently complex" class actions); *Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) (similar).

Litigation inherently involves risk. *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Plaintiffs likely would need to retain expensive forensics experts and litigate multiple *Daubert* motions. Certifying a class, surviving summary judgment, and proving liability at trial likely would require exhaustive briefing and additional first- and third-party discovery—*i.e.*, discovery from Defendant and any third-party vendors handling or contracted to handle the Private Information of the proposed Class Members. Achieving a class-wide recovery

like that provided by the Settlement also would require maintaining class status through trial—a difficult and uncertain prospect. And even if the Court were to certify the Settlement Class (and deny efforts to decertify it thereafter), even an initially favorable result would likely be delayed and possibly defeated by any Rule 23(f) petition.

*Risks of establishing damages*. At least three additional risks attend Plaintiffs' damages claims. *See Grinnell*, 495 F.2d at 463 (factor five). Proving *actual* damages likely would require substantial discovery into the nuances of how exfiltrated Private Information is first exfiltrated, marketed, and then sold, for what purposes it is used, at what cost this comes to the Plaintiffs, and at what cost these negative actions would have been deterred or prevented by the imposition of other security precautions.

In sum, the Settlement eliminates these risks while providing significant relief to the Settlement Class. These factors sharply weigh in favor of preliminary approval.

*Proposed method of distributing relief*. The proposed method of distributing relief to the class must be "effective." Fed. R. Civ. P. 23(e)(2)(C)(ii). Digital Settlement, LLC has designed a comprehensive Notice Plan that provides the best notice to the Settlement Class practicable under the circumstances. SA §§ II(G), II(I)(2). Settlement Class Members will submit claims using a simple, straightforward Claim Form, designed to maximize the number of claims made. *See* SA § II(I)(3); SA, Ex. C. Those who submit valid claims will receive payment by electronic means or by mailed checks. SA § II(H)(5)(a).

*Attorneys' fees and Service Awards*. Plaintiffs' counsel may move for an award of reasonable attorneys' fees and reimbursement of their litigation expenses. Fed. R. Civ. P. 23(e)(2)(C)(iii). In accordance with the Settlement's terms and the schedule set by the Court, Plaintiffs' counsel will apply for an award of attorneys' fees not to exceed one-third of the

Settlement Fund (*i.e.*, $508,283). *See* S.A. § (II)(F)(1). The Settlement is not conditioned upon award of fees. *Id.* Plaintiffs will apply for a service award of up to $2,500 to each Plaintiff (for a total of $7,500 for their efforts and commitment on behalf of the Settlement Class. S.A. § (II)(F)(2).

*No other agreements*. Pursuant to Rule 23(e)(3), there are no other agreements that would modify any term of the Settlement. Laukaitis Decl. ¶ 16.

**C.     The Settlement treats Settlement Class Members equitably.**

The proposed Settlement treats members of the Settlement Class equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). Defendant will establish a common fund from which payments will be distributed to Settlement Class Members who submit valid claims based on documented Out-of-Pocket Losses and on a *pro rata* basis. S.A. § (II)(H). This factor thus weighs in favor of preliminary approval.

**D.     The remaining factors weigh in favor of approval.[3]**

*Grinnell factors eight and nine*. Courts also evaluate the reasonableness of a proposed settlement in light of the best possible recovery, discounted by the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463. Analyzing these factors "does not involve the use of a mathematical equation yielding a particularized sum" and instead "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. at 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

---

[3] Because the Settlement Class has not received notice of the Settlement, consideration of *Grinnell* factor two (reaction of the class) is premature. *See Grinnell*, 495 F.2d at 463; *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008).

As discussed above, the Settlement's relief is substantial. S.A. § (II)(H). That is so, notwithstanding Defendant's hypothetical exposure should Plaintiffs litigate and prevail on all aspects of their claims and damages theories—an uncertain prospect. Indeed, even if Plaintiffs cleared the numerous hurdles leading up to trial (at the cost of years of more litigation and, most likely, hundreds of thousands of dollars), a larger recovery is not certain. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05-3452, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (settlement was robust and immediate compared to some "speculative payment of a hypothetically larger amount years down the road").

Courts recognize that in the settlement approval context, a claim's hypothetical value must be discounted by risks and practical realities. Thus, the Second Circuit has noted that courts may approve settlements even where the recovery is a fraction of the amount recoverable at trial. *See, e.g.*, *Grinnell*, 495 F.2d at 455 n.2 ("There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery."); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 428 (S.D.N.Y. 2001) (same); *accord, e.g.*, *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 294-95 (E.D. Mich. 2017) (approving settlement of 2% of total possible damages); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement of 3% to 7% of total damages).

Here, Plaintiffs' counsel weighed the risks against the hypothetical value of their claims and, ultimately, secured a substantial monetary award of $1,525,000.00. Laukaitis Decl., ¶ 14. Because the Settlement Agreement provides this immediate and significant relief without the attendant risks of continued litigation, Grinnell factors eight and nine weigh in favor of approval.

***Grinnell factor seven***. The fact that Defendant might be able to withstand a greater

judgment does not change the analysis. *See Grinnell*, 495 F.2d at 463 (factor seven). A defendant

need not "empty its coffers before a settlement can be found adequate." *In re IMAX Sec. Litig.*,

283 F.R.D. 178, 191 (S.D.N.Y. 2012); *see also In re Sinus Buster Products Consumer Litig.*, No.

12-cv-02429, 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) ("[A]bility to pay is much

less important than the other *Grinnell* factors, especially where the other factors weigh in favor

of approving the settlement."); *Viafara v. MCIZ Corp.*, No. 12-cv-07452, 2014 WL 1777438, at

*7 (S.D.N.Y. May 1, 2014) (similar). This factor is neutral.

     ***Scope of release***. A final consideration is the scope of the Release. *See In re Payment

Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. at 42 n.41 (E.D.N.Y.

2019) (although not a *Grinnell* factor, courts may look to the scope of the release in determining

proposed settlement's reasonableness). In exchange for the relief described above, Plaintiffs and

the Settlement Class release all claims that have or could have been asserted against Defendant

and relating to the facts, transactions, or events alleged in this action. Further, the Release is

limited to the exact conduct alleged in the Amended Complaint by Plaintiffs, because it pertains

to claims "relating to the Data Security Incident." *See* SA § II(A)(6). The Release does not

immunize Defendant from liability for future events. In sum, the Release is calculated to

"achieve a comprehensive settlement that [will] prevent relitigation of settled questions at the

core of [this] class action." *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d

Cir. 1982). This factor weighs in favor of approval.

*     *     *

     The Rule 23(e)(2) and *Grinnell* factors strongly support a finding that the Court will

likely be able to approve the Settlement as "fair, reasonable, and adequate."

**VI.**     <u>**THE COURT WILL BE ABLE TO CERTIFY THE SETTLEMENT CLASS.**</u>

     Rule 23(e)(1) provides that preliminary approval should be granted (and notice

18

disseminated) where the Court "will likely be able to" certify the class for purposes of judgment on the proposed settlement. Fed. R. Civ. P. 23(e). Class certification is a two-step process: ***first***, Plaintiffs must establish numerosity, commonality, typicality, and adequacy under Rule 23(a); ***second***, Plaintiffs must establish that one of the bases for certification in Rule 23(b) is met. Plaintiffs contend, and Defendant does not dispute for settlement purposes only, that the proposed Settlement Class meets these requirements.

### A.      The Requirements of Rule 23(a) are satisfied.

Rule 23(a) has four prerequisites for certification of a class: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequate representation. FED. R. CIV. P. 23(a). The Settlement Class meets each prerequisite and, therefore, satisfies Rule 23(a).

### 1.      Numerosity is Satisfied.

Under Rule 23(a)(1), Plaintiffs must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1). The Second Circuit has found numerosity met where a proposed class is "obviously numerous." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Here, numerosity is easily satisfied, as the Settlement Class includes over 85,000 people. *See* Laukitis Decl., ¶ 6.

### 2.      Commonality is Satisfied.

Under Rule 23(a)(2), Plaintiffs must show that "questions of law or fact common to the [proposed] class" exist. FED. R. CIV. P. 23(a)(2). Commonality requires that the class claims "depend upon a common contention" that "must be of such a nature that it is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "For purposes of Rule 23(a)(2) even a single common question will do." *Id.* (cleaned up). Plaintiffs need only show that their injuries "derive[d] from defendants' . . . unitary course of conduct." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015).

Here, many significant common questions of law and fact exist, including:

1) Whether Defendant had a legal duty to Representative Plaintiffs and the Classes to exercise due care in collecting, storing, using, and/or safeguarding their PHI/PII;

2) Whether Defendant knew or should have known of the susceptibility of its data security systems to a data breach;

3) Whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

4) Whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;

5) Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

6) Whether Defendant adequately, promptly, and accurately informed Representative Plaintiffs and Class Members that their PHI/PII had been compromised;

7) How and when Defendant actually learned of the Data Breach;

8) Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PHI/PII of Representative Plaintiffs and Class Members;

9) Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

10) Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard Representative Plaintiffs' and Class Members' PHI/PII;

11) Whether Representative Plaintiffs and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate as a result of Defendant's wrongful conduct; and

12) Whether Representative Plaintiffs and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

All Settlement Class Members' claims will be resolved by answering these common questions. Indeed, the overarching focus for all these inquiries is Defendant's common course of conduct, *i.e.*, its knowing disclosure of Plaintiffs' and Settlement Class Members' PII.

### 3.    Typicality is Satisfied.

Typicality requires the representative party's claims to be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). That requirement is satisfied by showing that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993). "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10-cv-07493, 2013 WL 4080946, at *19 (S.D.N.Y. May 30, 2013); *see also Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) ("The typicality requirement 'is not demanding.").

Here, the typicality requirement is met because (1) Plaintiffs' claims stem from the same Incident as the claims of the Settlement Class Members; and (2) such disclosure affected Plaintiffs and Settlement Class Members in substantially the same way. *See Robidoux*, 987 F.2d at 936–37.

### 4.    Adequacy of Representation is Satisfied.

Under Rule 23(a)(4), the adequate representation requirement is satisfied when the proposed class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires that: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A.*, 126 F.3d at 378. "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998) (internal citation omitted).

***First***, Plaintiffs have no interests in conflict with the Settlement Class, as they are equally interested in obtaining relief for Defendant's alleged misconduct and ensuring that Defendant reforms its business practices. Laukitis Decl., ¶ 17. Plaintiffs and the Settlement Class members

21

were all allegedly injured in the same manner based on their relationship with Defendant. *Cf.*

*Damassia v. Duane Read, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (plaintiffs' claims being

typical of the class is "strong evidence that their interests are not antagonistic"). Further,

throughout the pendency of this action, Plaintiffs have adequately and vigorously represented

their fellow Class Members. They have spent time assisting their counsel, including reviewing

pleadings, answering counsel's questions, and aiding with settlement. Laukitis Decl., ¶ 17. These

same facts support Plaintiffs' appointment as Class Representatives for the Settlement Class.

 ***Second***, Plaintiffs' counsel have extensive experience litigating, trying, and settling class

actions, including consumer data breach cases like this, throughout the country. *Id*. ¶ 2. Courts

have recognized Plaintiffs' counsel's experience in complex class litigation and their skilled and

effective representation. *Id*. Plaintiffs' counsel had sufficient information at their disposal before

agreeing to a mediator's proposal and thus were able to balance the benefits of settlement against

the risks of litigation. *Id.* ¶ 12. They have invested considerable time and resources into the

prosecution of this case and are capable and committed to achieving the best result for Plaintiffs

and the Settlement Class. *Id.* ¶ 13. Accordingly, Plaintiffs' counsel satisfies Rule 23(a)(4)'s

adequacy requirement. *See, e.g.*, *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*,

241 F.R.D. 185, 199 n.99 (S.D.N.Y. 2007) ("In the absence of proof to the contrary, courts

presume that class counsel is competent and sufficiently experienced to prosecute vigorously the

action on behalf of the class.").

 Separately, Rule 23(g) requires the Court to appoint Class Counsel to represent the

Settlement Class. Considering Plaintiffs' counsel's work in this action, their collective

familiarity and experience in handling similar actions, and the resources they have committed to

representing the Settlement Class, they should be appointed Class Counsel under Rule 23(g)(3)

and confirmed under Rule 23(g)(1). *See* Laukitis Decl., ¶¶ 11-13; SA, Exs. 2-4.

      **B.**      **The Settlement Class Meets All Rule 23(b)(3) Requirements.**

Rule 23(b)(3) requires the Court to find that (1) questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3).

      **1.**      **Predominance**

Rule 23(b)(3) requires a finding that common issues of law or fact predominate over any issues unique to individual class members. The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623 (citation omitted). "[A] plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) (citation omitted). In the settlement context, moreover, the potential for trial manageability problems posed by individualized issues falls away because "the proposal is that there be no trial." *Amchem Prods., Inc.*, 521 U.S. at 620; *accord, e.g.*, *Tart*, 2015 WL 5945846, at *4 ("[T]he predominance inquiry will sometimes be easier to satisfy in the settlement context.").

Here, common questions predominate over any questions that may affect individual Settlement Class Members. The core questions are whether Defendant had a legal duty to Representative Plaintiffs and the Classes to exercise due care in collecting, storing, using, and/or safeguarding their PHI/PII, and whether Defendant breached this duty. However these core questions are answered, all Settlement Class Members will be entitled to the same legal remedies premised on the same alleged wrongdoing. The issues affecting every Settlement Class Member

are substantially the same. Those issues are subject to "generalized proof" and "outweigh those issues that are subject to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d at 227–28 (citation omitted). This case thus falls within "the types of cases [that] are uniquely well-suited to class adjudication"—*i.e.*, those based on uniform violation of common statutory rights. *See*, *In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*, 270 F.R.D. 45, 56 (D. Mass 2010).

### 2. <u>Superiority</u>

Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the class action mechanism is superior to individual actions for at least three reasons.

*First*, "[t]he potential class members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Meredith Corp.*, 87 F. Supp. 3d at 661 (citation omitted).

*Second*, a class action "will conserve judicial resources" and "is more efficient for Class Members, particularly those who lack the resources to bring their claims individually." *Zeltser*, 2014 WL 4816134, at *3 (citation omitted).

*Third*, the expense and burden of litigating highly technical data breach claims, compared against the modest potential for individual recovery, make it impractical for the Settlement Class Members to seek redress on an individual basis. In a class action, litigation is viable because costs are spread across the entire class. *See, e.g.*, *Tart*, 2015 WL 5945846, at *5.

Accordingly, this Court "will likely be able to" certify the class for purposes of judgment on the proposed Settlement under Rule 23(e).

## VII.   <u>THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.</u>

Before a proposed class settlement may be finally approved, the Court "must direct notice

24

in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ.

P. 23(e)(1)(B). Where seeking certification of a Rule 23(b)(3) settlement class, the notice must

also comply with Rule 23(c)(2)(B), which requires "[a]t a minimum" that the notice inform class

members of:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who request exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The Court is given broad power over which procedures to use for

providing notice, so long as the procedures are reasonable and comport with due process. *Visa*,

396 F.3d at 113; *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("[T]he

district court has virtually complete discretion as to the manner of giving notice to class

members.").

The Settlement Agreement proposes that the Court appoint Digital Settlement, LLC

("Digital Settlement") to oversee implementation of the Notice Plan, as well as processing

Settlement Class Member claims and payments. SA § II(G). The Parties selected Digital

Settlement from the proposals submitted by four claims and notice administrators and after

reviewing their competing proposals. *See* Laukitis Decl. ¶ 10.

The Parties propose a robust, state-of-the-art notice program, developed with Digital

Settlement's assistance, that includes direct notice to Settlement Class Members via U.S. mail

and email which will include an electronic link to the Claims Form. *Id.*; Settlement Agreement,

Ex. A (Short Notice). Plaintiffs understand from Defendant that it has mailing addresses for the

entire Settlement Class. *Id.*

Digital Settlement will also establish a dedicated Settlement Website through which

Settlement Class members can access case documents and obtain more detailed information about the Settlement, including important deadlines, such as the date for opting out or objecting to the Settlement. *Id.* The Settlement Website will also permit Settlement Class Members to complete or file Claim Forms online through a simple process. *Id.* Digital Settlement shall also set-up a toll-free number that will provide assistance via IVR, and will ensure that the IVR has a Spanish language component, and that relevant case documents are translated and made available in Spanish as well. *Id.*

The proposed notice program also provides sufficiently detailed notice. The notice defines the Settlement Class; explains all Settlement Class members' rights, the Parties' releases, and the applicable deadlines; and describes in detail the injunctive and monetary terms of the Settlement, including the procedures for allocating and distributing Settlement funds among the Settlement Class members. *Id.* It will plainly indicate the time and place of the Fairness Hearing, and it plainly explains the methods for objecting to, or opting out of, the Settlement. *Id.* It details the provisions for payment of Attorneys' Fees and Expenses and class representative Service Awards, and it provides contact information for Plaintiffs' Counsel. *Id.* This is sufficient. *See George v. Shamrock Saloon II, LLC*, 2021 WL 3188314, at *7 (S.D.N.Y. July 28, 2021) ("Class notice need only describe the terms of the settlement generally, which is a minimal requirement.").

## VIII.  PROPOSED SCHEDULE OF EVENTS

The next steps in the settlement approval process are to notify Settlement Class Members of the proposed Settlement, allow them an opportunity to exclude themselves or file objections, and hold a final approval hearing. In accordance with the proposed preliminary approval order submitted herewith as Exhibit 2 to the Declaration of Kevin Laukaitis, Plaintiffs request the Court set the following schedule:

26

| Event | Proposed Date/Deadline |
|---|---|
| Notice Date -- Deadline for dissemination of notice to the Settlement Class members | 30 calendar days after the Court enters the Preliminary Approval Order |
| Deadline for filing papers in support of final approval of Settlement and Plaintiffs' Counsel's application for Attorneys' Fees and Expenses | 45 calendar days after the Notice Date (75 calendar days after Court enters the Preliminary Approval Order) |
| Deadline for filing claims, objections and requests for exclusion | 60 calendar days after the Notice Date |
| Deadline for Settlement Administrator to file report to the Court | 14 calendar days before the Fairness Hearing |
| Deadline for Parties to file any responses to any objections and supplemental pleadings on status of the claims process | 14 calendar days before the Fairness Hearing |
| Fairness Hearing | At Court's convenience, but at least 118 calendar days from entry of the Preliminary Approval Order |

## IX.    **CONCLUSION**

Plaintiffs respectfully request the Court enter the proposed order granting preliminary approval, certifying the Settlement Class for settlement purposes, appointing Class Counsel, and approving the Notice Plan.

Dated: April 19, 2024                    **LAUKAITIS LAW LLC**

By:      */s/ Kevin Laukaitis*
         Kevin Laukaitis, Esq. (admitted *pro hac vice*)
         954 Avenida Ponce De Leon
         Suite 205, #10518
         San Juan, PR 00907
         Telephone:   (215) 789-4462
         Email:       klaukaitis@laukaitislaw.com

         Laura Van Note, Esq. (admitted *pro hac vice*)
         **COLE & VAN NOTE**
         555 12th Street, Suite 2100
         Oakland, California 94607
         Telephone:   (510) 891-9800
         Facsimile:   (510) 891-7030
         Email:       lvn@colevannote.com

         *Co-Lead Counsel for Representative Plaintiffs and
         the Proposed Class(es)*

         Erin Green Comite, Esq. (ct24886)
         Anja Rusi, Esq. (ct30686)
         **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
         156 S. Main St.
         P.O. Box 192
         Colchester, CT 06415
         Telephone:   (860) 537-5537
         Facsimile:   (860) 537-4432
         Email:       ecomite@scott-scott.com

         Joseph P. Guglielmo, Esq. (ct27481)
         **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
         The Helmsley Building
         230 Park Avenue, 17th Floor
         New York, NY 10169
         Telephone:   (212) 223-6444
         Facsimile:   (212) 223-6334

         *Liaison Counsel for Representative Plaintiffs and the
         Proposed Class(es)*

28